# United States Court of Appeals for the Federal Circuit

---

**WEBER, INC.,**
*Appellant*

**v.**

**PROVISUR TECHNOLOGIES, INC.,**
*Appellee*

---

2022-1751, 2022-1813

---

Appeals from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Nos. IPR2020-01556, IPR2020-01557.

---

Decided: February 8, 2024

---

RICHARD CRUDO, Sterne Kessler Goldstein & Fox PLLC, Washington, DC, argued for appellant. Also represented by TREVOR O'NEILL, RALPH WILSON POWERS, III.

MICHAEL BABBITT, Willkie Farr & Gallagher LLP, Chicago, IL, argued for appellee. Also represented by CRAIG C. MARTIN, REN-HOW HARN, SARA TONNIES HORTON.

---

Before REYNA, HUGHES, and STARK, *Circuit Judges*.

REYNA, *Circuit Judge*.

Weber appeals two final written decisions from the Patent Trial and Appeal Board. The Board determined that Weber failed to establish the unpatentability of the claims of Provisur's patents. The Board first found that Weber's operating manuals were not prior art printed publications. The Board also determined that the prior art did not disclose two challenged claim terms, one of which was included in the Board's claim construction of the challenged claims. We reverse the Board's printed publication determinations, vacate the Board's conclusions regarding Weber's failure to establish unpatentability of the challenged claims, and remand for further proceedings.

BACKGROUND

A. U.S. Patent Nos. 10,639,812 and 10,625,436

Provisur is the owner of U.S. Patent Nos. 10,639,812 ("'812 patent") and 10,625,436 ("'436 patent"). The '812 and '436 patents relate to high-speed mechanical slicers used in food-processing plants to slice and package food articles, such as meats and cheeses. '812 patent at Abstract.[1] Although the slicers have numerous components, three claimed components are relevant here: (1) the "food article loading apparatus"; (2) the "food article feed apparatus"; and (3) the "food article stop gate." *Id.* at 11:16–38.[2]

---

[1]    We primarily cite to the '812 patent, which shares a common specification with the '436 patent. The parties agree that claim 1 of the '812 patent is representative of the challenged claims in this appeal. Appellant Br. 12; Appellee Br. 2.

[2]    We will subsequently refer to the "food article loading apparatus" as the "loading apparatus," the "food article feed apparatus" as the "feed apparatus," and the "food article stop gate" as the "stop gate."

Figures 1B and 1 below[3] display the loading apparatus (108, labeled in Figure 1) (colored in blue) and the feed apparatus (120, labeled in Figure 1) (colored in orange). The loading apparatus (108) includes a lift tray (220) on which food articles are loaded while the lift tray is in a horizontal staging position. *Id.* at 2:52–54; 9:28–34. When the food is ready to be sliced, the lift tray pivots to an elevated position, as shown in Figure 1. From that position, the food articles enter the slicer's overhead feed apparatus (120). *Id.* at 4:33–43; 9:60–10:4.



Fig. 1B

*Id.* at Fig. 1B; Appellant Br. 8.

---

[3]    All figure and image annotations have been provided by the parties unless otherwise noted.

4                WEBER, INC. v. PROVISUR TECHNOLOGIES, INC.



Fig. 1

*Id.* at Fig. 1; Appellant Br. 8.

As shown in Figures 1 and 1B above, and Figure 2 below, the feed apparatus (120) contains "grippers" (894, labeled in the patent) (colored in green). The grippers grasp the food articles from behind while they are still supported by the lift tray and drive them downward along the feed path (shown in red dashed arrow) until they reach the slicing station (124) (shown in yellow in Figure 1). '812 patent at 2:55–60; 9:13–24. There, the food articles are sliced by the slicing blade (125) (shown in yellow in Figure 1B). *Id.* at 4:43–46.

Figure 2 shows a top-down view of the slicer where each gripper is independently driven by a conveyor belt

(802, 804, 806) coupled to its own servomotors (850). *Id.* at 9:15–24; 10:44–46.



Fig. 2

*Id.* at Fig. 2; Appellant Br. 10. Figure 2 shows that the feed apparatus (colored in orange) is positioned above the loading apparatus's lift tray (shown in blue dashed lines), such that the grippers (colored in green), feed path (red dashed arrow), and lift tray are generally aligned when viewed from a top-down position.

In addition to the loading apparatus and feed apparatus components, the stop gate, the third claimed component relevant on appeal, serves several purposes. '812 patent at 3:7–8. As shown below in Figure 13A, when a food article is loaded, it travels along the path of the red dashed arrow toward the slicing blade (125) until it reaches the stop gate (2020). The stop gate (shown in light blue) can, in this elevated position, act as a gate to temporarily block a loaded food article from prematurely sliding into the slicing station. *Id.* at 10:8–13. When the stop gate is lowered, as shown in Figure 13B, the stop gate acts as a floor to support the loaded food article as it slides toward the slicing blade (125). *Id.*



Figs. 13A & 13B; Appellant Br. 11–12.

Representative claim 1 of the '812 patent recites a food slicer containing two limitations at issue here: (1) the "disposed over" limitation and the (2) "stop gate" limitation. The "disposed over" limitation requires "a food article feed apparatus disposed over [the] food article loading apparatus." '812 patent at 11:17–18. The "stop gate" limitation requires that the stop gate support food articles "when the lift tray assembly is moved from its elevated position" to load new food articles. *Id*. at 11:33–36.

## B. The Prior Art

Weber asserted prior art references in both inter partes review ("IPR") proceedings that generally relate to food slicers. Weber presented its obviousness theories based on its commercial food slicer operating manuals in combination with U.S. Patent No. 5,628,237 ("Lindee") and U.S. Patent Publication No. 2009/0145272 ("Sandberg"). J.A. 8; J.A. 84–85. Weber's operating manuals were created and disseminated to accompany and explain how to use Weber's commercial food slicer products. J.A. 1311–481; J.A. 1698–

99.[4]  The operating manuals disclose that Weber's food slicer contains a "product conveyer" that is first in a horizontal position to receive food articles.  J.A. 1325.  After receiving food articles, the product conveyer is then elevated to a position where the food articles will be driven along a feed path toward a slicing blade.  J.A. 1350.  The operating manuals also disclose that a "product bed conveyor supports the transport of the product" and "prevents the products from sliding into the outlet in an uncontrolled manner."  J.A. 1331.

## C.  Procedural History

Provisur sued Weber in federal court alleging infringement of the '812 and '436 patent claims.  Weber then filed two IPR petitions alleging the unpatentability of claims 1–11 of the '812 patent and claims 1–16 of the '436 patent.  J.A. 277–345.  The Board instituted the IPRs based on obviousness theories involving Weber's operating manuals in combination with the Lindee and Sandberg references.  J.A. 419–43.  Relying on *In re Enhanced Security Research, LLC*, 739 F.3d 1347 (Fed. Cir. 2014), the Board initially found in its institution decisions that Weber provided evidence to "support the public availability" of the operating manuals.  J.A. 434–42.  In its final written decisions, the Board changed course.  The Board concluded that the operating manuals do not qualify as printed publications.  The Board first found that the operating manuals were distributed to just "ten unique customers."  J.A. 29; J.A. 106.  The Board further found that the operating manuals were subject to confidentiality restrictions based on the Board's interpretation of the operating manuals' copyright notice and the intellectual property rights clause in Weber's terms

---

[4]  Since the operating manuals are substantively identical in relevant portions, even though they are dated years apart, we cite to the 2006 operating manual as representative.  Appellant Br. 14.

and conditions underlying the sales of each slicer product. J.A. 28–31; J.A. 105–08.

On the merits, the Board determined that, even if Weber's manuals qualify as printed publications, Weber's asserted prior art combinations do not disclose the "disposed over" and "stop gate" limitations from claim 1 in each challenged patent. J.A. 70; J.A. 139. For the "disposed over" limitation, the Board's conclusion rested on its claim construction of the term "disposed over" to require that the "feed apparatus and its conveyor belts and grippers are 'positioned above and in vertical and lateral alignment with' the food article loading apparatus and its lift tray assembly." J.A. 18; J.A. 95. The Board explained that vertical alignment means that the feed apparatus is "directly above the loading apparatus." J.A. 13; J.A. 90. And in the Board's view, laterally aligned means that "there is no offset between the sides of feed apparatus and the loading apparatus" when viewed from above. J.A. 13; J.A. 90.

For the "stop gate" limitation, the Board rejected Weber's expert's reliance on Figures 10 and 227 of the operating manuals. The Board faulted these figures for not physically depicting a food article in the slicer or the food lift tray and criticized this as insufficient to show that the product bed conveyor of the operating manuals supported the food article when the product conveyor moves from its elevated position. J.A. 68–69; J.A. 142.

Thus, the Board determined that Weber's asserted prior art failed to disclose the "disposed over" and "stop gate" limitations from claim 1 in each challenged patent. As a result, the Board concluded that Weber failed to carry its burden of proving unpatentability for the dependent claims. J.A. 73–74; J.A. 146–47.

Weber appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(A).

STANDARD OF REVIEW

We review de novo the Board's legal conclusion on whether a reference is a printed publication under 35 U.S.C. § 102(b) and its underlying factual findings for substantial evidence. *Valve Corp. v. Ironburg Inventions Ltd.*, 8 F.4th 1364, 1372–73 (Fed. Cir. 2021).

Claim construction is a question of law with underlying questions of fact. *Wasica Fin. GmbH v. Cont'l Auto. Sys., Inc.*, 853 F.3d 1272, 1278 (Fed. Cir. 2017). We review de novo the Board's ultimate claim construction and its supporting determinations that are based on intrinsic evidence. *Personalized Media Commc'ns, LLC v. Apple Inc.*, 952 F.3d 1336, 1339 (Fed. Cir. 2020).

We review the Board's ultimate obviousness determinations on a de novo basis and any underlying factual determinations for substantial evidence. *Rembrandt Diagnostics, LP v. Alere, Inc.*, 76 F.4th 1376, 1382 (Fed. Cir. 2023). The scope and content of the prior art is a question of fact. *Intel Corp. v. PACT XPP Schweiz AG*, 61 F.4th 1373, 1378 (Fed. Cir. 2023). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted).

DISCUSSION

Weber appeals the Board's conclusions that it failed to establish unpatentability of the challenged claims. Weber first argues that the Board erred in its determinations that Weber's operating manuals were not "printed publication[s]" under pre-AIA 35 U.S.C. § 102(b). Weber next argues that the Board erred in its claim construction of the "disposed over" claim term. Finally, Weber challenges the Board's determinations that the operating manuals do not disclose the "stop gate" limitation. We address each issue in turn.

## A. Printed Publications

The statutory phrase "printed publication" from § 102 has been defined to mean a reference that was "sufficiently accessible to the public interested in the art." *In re Klopfenstein*, 380 F.3d 1345, 1348 (Fed. Cir. 2004) (citation omitted). The touchstone of whether a reference constitutes a printed publication is public accessibility. *Jazz Pharms., Inc. v. Amneal Pharms., LLC*, 895 F.3d 1347, 1355 (Fed. Cir. 2018). The standard for public accessibility is whether interested members of the relevant public could locate the reference by reasonable diligence. *Valve*, 8 F.4th at 1376.

Weber contends that the Board erred in determining that Weber's operating manuals were not sufficiently publicly accessible to constitute printed publications. According to Weber, the Board misapplied our public-accessibility precedent, including *Cordis Corp. v. Boston Scientific Corp.*, 561 F.3d 1319 (Fed. Cir. 2009), and misinterpreted the record evidence. We first address the Board's reliance on *Cordis* and then the evidence of record.

The Board improperly reviewed this case in the context of the *Cordis* framework. In *Cordis*, the references were two academic monographs describing an inventor's work on intravascular stents that were only distributed to a handful of university and hospital colleagues as well as two companies interested in commercializing the technology. 561 F.3d at 1333–34. We observed that the record contained "clear evidence that such academic norms gave rise to an expectation that disclosures will remain confidential." *Id.* at 1334. There was also no showing "that these or similar commercial entities typically would make the existence of such documents known and would honor requests for public access." *Id.* at 1335.

*Cordis* is readily distinguishable from this case. Weber's operating manuals were created for dissemination to the interested public to provide instructions about how to assemble, use, clean, and maintain Weber's slicer, as well

as guidance for addressing malfunctions that users might encounter. J.A. 1313–19 (table of contents); J.A. 1312 (customer service information). These operating manuals stand in stark contrast to *Cordis* and the confidential nature of the monographs and circumstances surrounding disclosure, including academic confidentiality norms. Where, as here, "a publication's purpose is 'dialogue with the intended audience,' that purpose indicates public accessibility." *Valve*, 8 F.4th at 1374 (citation omitted).

The record evidence shows that Weber's operating manuals were accessible to interested members of the relevant public[5] by reasonable diligence. For instance, Weber employees testified that the operating manuals could be obtained either upon purchase[6] of the Weber food slicer or upon request directed to a Weber employee. *See, e.g.*, J.A. 2222–34 (Weber employee declaration); J.A. 3288–97 (Weber employee declaration). Weber's declarants provided

---

[5]    The parties dispute the exact number of customers who received the operating manuals (whether it was ten entities or over forty entities), but we need not resolve that dispute here to review public accessibility. Appellant Br. 31; Appellee Br. 6. No minimum number of occasions of access is dispositive of the public accessibility inquiry in all cases.

[6]    At oral argument, Provisur's counsel argued that the high cost of Weber's commercial slicers prevented the operating manuals from being considered sufficiently accessible by reasonable diligence. Oral Arg. 18:14–19:25. Cost alone cannot be dispositive because the printed-publication inquiry is focused on the interested public, not the general public. *See GoPro, Inc. v. Contour IP Holding LLC*, 908 F.3d 690, 695 (Fed. Cir. 2018). Here, the interested public includes commercial entities that can afford high-cost slicers.

actual examples of deliveries of the operating manuals to customers. *E.g.*, J.A. 2222–34.

Weber's employees' declarations are corroborated and supported by testimony, delivery notes, invoices, price lists, declarations, and email exchanges between Weber employees and customers. *See, e.g.*, J.A. 4200–427 (Weber invoices and delivery notes); J.A. 7664–68 (customer declaration); J.A. 12754–68 (email correspondence regarding manual dissemination). A Weber employee also testified that the operating manuals were publicly accessible at certain trade shows or at Weber's factory showrooms. J.A. 9580–612 (Weber employee declaration). Provisur's Vice-President conceded that Weber sold about forty slicers during the relevant time period, and it was Weber's "general practice" to provide operating manuals with the purchase of each slicer. J.A. 12579–80 (40:7–41:20).

The foregoing establishes that the Board's printed publication determinations are unsupported by substantial evidence. *See, e.g.*, *In re Enhanced Security Research,* 739 F.3d at 1354–57 (affirming the Board's determination that an operating manual distributed with a software product was publicly accessible because of testimony and advertisements); *GoPro, Inc. v. Contour IP Holding LLC*, 908 F.3d 690, 694–96 (Fed. Cir. 2018) (involving a trade show).

The Board's contrary conclusions on public accessibility were based in part on the Board's inordinate emphasis on alleged confidentiality restrictions associated with the operating manuals. The Board first reviewed the operating manuals' copyright notice, which state that the operating manuals may not "be reproduced or transferred in any way." J.A. 1312. The Board determined that this notice "require[s] confidentiality." J.A. 29–30; J.A. 106–07. The Board also found another confidentiality restriction based on the intellectual property rights clause from Weber's terms and conditions, which covers sales of each slicer product, and states "[c]ost estimates, drafts, drawings and

other documents remain the property of [Weber]."  J.A. 30 (quoting J.A. 12889); J.A. 107–08.

We disagree with the Board's decisions that the operating manuals were not printed publications because they were subject to confidentiality restrictions.  The copyright notice itself allows the original owners and their personnel to copy the operating manual for their own internal use.  J.A. 1312.  Weber expressly instructed customers who were re-selling their slicers to transfer their operating manuals to purchasing third parties.  J.A. 12487.  Weber's assertion of copyright ownership does not negate its own ability to make the reference publicly accessible.  *Cf. Correge v. Murphy*, 705 F.2d 1326, 1328–30 (Fed. Cir. 1983) ("A mere assertion of ownership can not convert what was in fact a public disclosure and offer to sell to numerous potential customers into a non-disclosure.").  The intellectual property rights clause from Weber's terms and conditions covering sales, likewise, has no dispositive bearing on Weber's public dissemination of operating manuals to owners after a sale has been consummated.

We hold that the Board's determinations that Weber's operating manuals were not publicly accessible are unsupported by substantial evidence.  We thus reverse the Board's finding that Weber's operating manuals do not qualify as printed publications.

## B.  The "Disposed Over" Limitation

A claim term is given its ordinary and customary meaning—the meaning that a term would have to a skilled artisan at the time of the invention. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–13 (Fed. Cir. 2005) (en banc).  In construing a claim term, we first look to the intrinsic evidence, including the claims themselves, the specification, and the prosecution history of the patent. *Personalized Media*, 952 F.3d at 1340.

The Board construed the term "disposed over" to require that the "feed apparatus and its conveyor belts and grippers are 'positioned above and in vertical and lateral alignment with' the food article loading apparatus and its lift tray assembly." J.A. 18; J.A. 95. Weber argues that this construction is incorrect because the Board narrowly construed the "disposed over" term by importing limitations from the specification when the claim term only requires that the feed apparatus "is generally positioned above" the loading apparatus. Appellant Br. 53. We conclude that the Board erred in its construction.

The claim language itself only recites that the "feed apparatus" is "disposed over" the "loading apparatus." '812 patent at 11:17–18. The claim language contains no restrictions that would require direct alignment of the conveyor belts and lift tray assembly from the two apparatuses. "Had the patent drafter intended to limit the claims" to address the alignment of the conveyor belts and lift tray assembly between the apparatuses, "narrower language could have been used in the claim." *Cyntec Co. v. Chilisin Elecs. Corp.*, 84 F.4th 979, 986 (Fed. Cir. 2023). The parties' experts generally agreed that the plain claim language did not contain additional alignment requirements. J.A. 9481 (¶74) (Weber's expert); J.A. 12005 (133:16–22) (Provisur's expert). Our case law does "not support prescribing a more particularized meaning unless a narrower construction is required by the specification or prosecution history." *3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315, 1329 (Fed. Cir. 2013).

Further, the specification does not require the direct alignment of the conveyor belts and lift tray assembly between the two apparatuses. The phrase "disposed over" does not appear in the specification. The specification does explain, which the Board relied on, that the loading apparatus's grippers and lift tray are "in line with the food article feed paths." '812 patent at 2:52–53; 9:10–25. But these passages merely describe the spatial relationship of

specific components—the feed path and grippers as aligned with the loading apparatus's lift tray. These passages do not disclose a limitation that the feed apparatus, including the conveyer belts that drive the grippers, must be aligned with the loading apparatus and its lift tray. "[A]lthough the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments." *Phillips*, 415 F.3d at 1323. Our review of the prosecution history does not change our conclusion.

The plain language of the claims, read in view of the specification, requires only that the feed apparatus be generally positioned above the loading apparatus. The claim term's recitation of broad language "compels a similarly broad result." *Malvern Panalytical Inc. v. TA Instruments-Waters LLC*, 85 F.4th 1365, 1372 (Fed. Cir. 2023). We need not consider the extrinsic evidence that limits the claim scope in a manner not contemplated by the intrinsic record. *Genuine Enabling Tech. LLC v. Nintendo Co.*, 29 F.4th 1365, 1372–73 (Fed. Cir. 2022). Accordingly, we reverse the Board's claim construction.

We note that Provisur does not dispute that Weber's prior art satisfies this limitation under Weber's proposed construction. *See generally* Appellee Br.; Oral Arg. 7:10–7:50, 27:54–28. As a result, our review of the Board's claim construction is dispositive of this issue. We therefore hold that the asserted prior art discloses the "disposed over" limitation from claim 1 in each challenged patent.

## C. The "Stop Gate" Limitation

Weber contends that the Board erred in determining that the "product bed conveyer" disclosed in Weber's operating manuals, including as shown in Figures 10 and 227, does not disclose the "stop gate" limitation. We conclude that the Board's determinations are not supported by substantial evidence.

16                    WEBER, INC. v. PROVISUR TECHNOLOGIES, INC.

The claim language requires that the "stop gate" support food articles "when the lift tray assembly is moved from its elevated position" back down to load new food articles. '812 patent at 11:33–36. Like the stop gate, the product bed conveyer "supports the transport of the product" and "prevents the products from sliding into the outlet in an uncontrolled manner." J.A. 1331. The core remaining issue is whether the product bed conveyer is in its floor position *when* the product bed (lift tray) moves from its elevated position to the loading position.

Figures 10 and 227 below depict the product bed conveyer (shown in light blue) acting in the supporting floor position *when* the product holders are at the end of the feed path and the product bed (shown in dark blue) is lowered to receive more food articles.



5.12.1    Product bed conveyor (product length up to 1200 mm)

Fig. 227    Position of the product bed conveyor

J.A. 1480 (Fig. 227); Appellant Br. 64.



1.6.2      Product bed conveyor (product length up to 1200 mm)

Fig. 10     Position of the product bed conveyor

J.A. 1331 (Fig. 10); Appellant Br. 64.

Based on these figures, Weber's expert testified that a skilled artisan would understand that, because the product holder is near the blade, the food slicer is at the end of the slicing operation and the product holder has finished feeding the food article into the blade while the product bed conveyer is in the floor position. J.A. 9486–90 (¶¶86–88). Weber's expert explained that a skilled artisan would understand that the lift tray moves from its elevated position to its loading position for additional food articles during the fast-slicing operation when the product bed conveyer is in the floor position. *Id.*

In reaching a contrary conclusion, the Board failed to meaningfully consider Weber's cited Figures 10 and 227 and accompanying expert testimony. J.A. 65–69; J.A. 141–42. The Board primarily faulted the operating manuals for not physically showing a food article in the slicer or the product conveyor. J.A. 68–69; J.A. 142. But since the product conveyor is expressly disclosed by the operating manuals, an image of a food article is not needed to understand those teachings. The evidence offered by Weber, showing

that the operating manuals disclose the "stop gate" limitation from claim 1 in each challenged patent, leaves the Board's contrary finding without substantial evidentiary support. Thus, we reverse the Board's finding.

## CONCLUSION

We have considered Provisur's remaining arguments and find them unpersuasive. We reverse the Board's determinations that Weber's operating manuals are not printed publications and that the prior art does not disclose the "disposed over" and "stop gate" limitations. We vacate the Board's conclusions that Weber failed to establish unpatentability of claims 1–11 of the '812 patent and claims 1–16 of the '436 patent, and remand for further proceedings consistent with this opinion.

## REVERSED-IN-PART, VACATED-IN-PART AND REMANDED

## COSTS

Costs against Provisur.